# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIDA SOUPHASITH,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ITT HARTFORD LIFE & ANNUITY INSURANCE COMPANY and DOES 1-50,<br><br>　　　　　　Defendants.<br>_____/ | Case No. 1:15-cv-01269-DAD-SKO<br><br>**ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION AND MODIFYING THE SCHEDULING ORDER TO EXTEND NON-EXPERT DISCOVERY DEADLINE**<br><br>(Docket No. 13) |

## I.　INTRODUCTION

On July 14, 2016, Plaintiff Nida Souphasith ("Plaintiff") filed an ex parte application to modify the Court's scheduling order and extend the non-expert discovery deadline to accommodate the production of documents by a third party, The Prudential Insurance Company of America ("Prudential"), after entry of a protective order. (Doc. 13.) On July 19, 2016, Defendant ITT Hartford Life & Annuity Insurance Company ("Defendant") filed an opposition. (Doc. 15.)

For the reasons set forth below, Plaintiff's ex parte application is GRANTED and the scheduling order shall be modified to extend the non-expert discovery deadline by thirty (30) days to August 15, 2016, limited only to the production of documents by Third Party Prudential.

//

//

## II. BACKGROUND

**A.    Factual Background of Case[1]**

In November 1994, Koth Khamphasouk obtained a "flexible premium adjustable" life insurance policy from Defendant, naming Plaintiff, her granddaughter, as beneficiary (the "Policy"). Ms. Khamphasouk died on November 17, 2012. Plaintiff alleges that under the Policy, Defendant was obligated to pay Plaintiff the face value of the Policy, or $50,000.00, at the time of the death of Ms. Khamphasouk. In addition to paying the death benefit, Plaintiff alleges that Defendant was obligated under the Policy to pay interest to Plaintiff from the date of Ms. Khamphasouk's death until the death benefits were paid. (Doc. 1, p. 9.) Plaintiff alleges that she timely tendered notice of Ms. Khamphasouk's death to Defendant and cooperated with Defendant in connection with her attempt to collect benefits under the Policy, but that Defendant failed to conduct a complete and unbiased investigation, disregarded information, and ultimately improperly denied benefits to Plaintiff under the Policy. (Doc. 1, p. 10.)

**B.    Procedural Background**

Plaintiff's complaint was filed in the Fresno County Superior Court on November 19, 2014, and removed to this Court on August 18, 2015. (Doc. 1.) On November 30, 2015, the Court issued a scheduling order requiring the parties to complete all non-expert discovery on or before July 15, 2016. (Doc. 9, 3:4-5.) The scheduling order set forth the following requirements regarding extensions of deadlines contained in the order:

> If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the Court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent status conference.
>
> Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested. The parties are advised that due to the impacted nature of civil cases on the district judges in the Eastern District of California, Fresno Division, that stipulations to continue set dates are disfavored and will not be granted absent good cause.

---

[1] The factual background summarizes Plaintiff's allegations as set forth in the Complaint. (Doc. 1, Compl.)

2

(Doc. 9, 8:20-9:2.)

On July 14, 2016, Plaintiff filed an ex parte application to modify the Court's scheduling order and extend the non-expert discovery deadline, which Defendant opposed on July 19, 2016. (Docs. 13, 15.)

### III. DISCUSSION

**A.  Relevant Facts**

    **1.  The Prudential Documents**

Plaintiff propounded Request for Production of Documents, Set One, to Defendant on October 16, 2015. (Doc. 13-2, Declaration of Quentin Cedar In Support of Ex Parte Application ("Cedar Decl."), ¶ 3.) On October 30, 2015, Defendant's counsel sent a letter to Plaintiff's counsel in reference to their upcoming telephone conference "to discuss Rule 26(f) issues." (Doc. 15-1, Cynthia Liu's Declaration in Support of Defendant's Opposition ("Liu Decl."), ¶ 2; Doc. 15-2, Ex. A.) In that letter, defense counsel wrote:

> Like you, I anticipate that discovery will proceed smoothly and see no reason to deviate from the normal pretrial procedures for this relatively straightforward case. The one caveat, which I mentioned in our last call, is that [Defendant] sold its life business to Prudential in 2013, and the witnesses and documents pertaining to that business are no longer under [Defendant's] control. As a result, our client's ability to produce documents and witnesses relevant to the subject policy and claim is quite limited.

(Doc. 15-2, Ex. A.) Defendant served its responses to Plaintiff's Request for Production on November 19, 2015, in which it took the position that documents pertaining to Defendant's handling and adjustment of insurance claims were not within Defendant's possession, custody, or control. (Doc. 13-2, Cedar Decl., ¶ 3 and Ex. 1.)

On February 5, 2016, Defendant's counsel wrote Plaintiff's counsel regarding "two discovery issues," including the information Defendant contended was within Prudential's exclusive possession, custody, and control:

> We have now had the opportunity to follow up further with [Defendant] regarding the two discovery issues we discussed on Wednesday. Without waiving any previously-stated objections or agreeing that plaintiff is entitled to further responses, we propose the following:

3

[. . .]

[Defendant] has searched for records of other California lawsuits alleging bad faith in the handling of a claim for death benefits under individual life insurance policies from 2010 through the present.

As a starting point, the relevant window for claims-handling purposes is 2010 through 2012, since Prudential took over all claims-handling responsibility when it purchased [Defendant's] life business effective January 1, 2013. [Defendant] made no claims-handling decisions after that point.

[Defendant] is willing to serve an amended response to plaintiff's Interrogatory No. 5 stating that it has no records of receiving any suit in California since 2010 alleging bad faith in the pre-transfer (to Prudential) handling of a claim for death benefits under an individual life insurance policy.

(Doc. 15-1, Liu Decl., ¶ 3; Doc. 15-2, Ex. B).

Five days after receiving defense counsel's letter, on February 10, 2016, Plaintiff's counsel served Prudential with a subpoena seeking documents relating to Prudential's handling and adjustment of claims on Defendant's behalf, among other documents. (Doc. 15-1, Liu Decl., ¶5; Doc. 15-2, Ex. C.) On May 18, 2016, Prudential responded to Plaintiff's subpoena, but "objected to and withheld the production of the claims handling materials which were being sought." (Doc. 13-2, Cedar Decl., ¶4.) Following the receipt of Prudential's responses and after meeting and conferring, Prudential's counsel agreed to produce the claims handling materials subject to a protective order. (Doc. 13-2, Cedar Decl., ¶ 5.)

**2.     The Protective Order**

On June 15, 2016, Plaintiff's counsel submitted a proposed protective order to Defendant's counsel. (Doc. 13-2, Cedar Decl., ¶6 and Ex. 2.) Defendant's counsel sent marked revisions to the protective order to Plaintiff's counsel on June 20, 2016. (Doc. 13-2, Cedar Decl., ¶ 8 and Ex. 3.) On July 12, 2016, Plaintiff's counsel sent a revised version of the protective order that purported to incorporate Defendant's counsel's comments. (Doc. 13-2, Cedar Decl., ¶ 9 and Ex. 4.) That same day, Defendant counsel sent an email to Plaintiff's counsel, pointing out that the revised version of the protective order did "not address most of our comments/edits sent on June 20, 2016." (Doc. 13-2, Ex. 5.) The email continued: "Accordingly, [Defendant] cannot agree to this stipulation. Once all of our prior comments/edits have been address, we can review

the document again." (*Id.*)  Defense counsel attached a copy of her June 20, 2016 correspondence identifying Defendant's revisions to the protective order to her July 12 email. (*Id.*)

The next day, on July 13, 2016, the parties convened for a deposition in the case.  Before the deposition began, Plaintiff's counsel inquired as to the status of the protective order. (Doc. 13-2, Cedar Decl., ¶ 12; Doc. 15-1, Liu Decl, ¶ 9.)  Defendant's counsel told Plaintiff's counsel that she had received the revised protective order and had responded to his email the day before. (*Id.*)  During that conversation, Defendant's counsel did not mention whether Defendant had rejected the revised draft. (*Id.*)  Later that day, Plaintiff's counsel read Defendant's counsel's July 12 email correspondence rejecting the revised protective order and placed a call to Defendant's counsel to discuss. (Doc. 13-2, Cedar Decl., ¶ 11.)  Because Defendant's counsel was unavailable, Plaintiff's counsel left a message requesting that his call be returned. (*Id.*)

Defense counsel returned Plaintiff's counsel's call to discuss the revised protective order that next day.  Although the parties disagree on what transpired during that telephone call, they do agree that Defendant's counsel ultimately requested that any further communications regarding the protective order be made in writing. (Doc. 13-2, Cedar Decl., ¶13; Doc. 15-1, Liu Decl, ¶10.)  When Plaintiff's counsel requested to continue the discussion over the phone against Defendant's counsel's wishes, Defendant's counsel put Plaintiff's counsel "on hold" to seek advice from a colleague. (Doc. 13-2, Cedar Decl., ¶ 14; Doc. 15-1, Liu Decl., ¶ 10.)  After determining that Defendant's counsel did not intend to return to the call, Plaintiff's counsel hung up. (*Id.*)

Shortly after that phone call, Plaintiff's counsel wrote Defendant's counsel "regarding [Defendant's] proposed changes to the protective order for the document production by Prudential and my request that [Defendant] stipulate to extend the discovery cutoff 30 days as it relates to this issue: Prudential's production of documents subject to a protective order.  This email is to reiterate and confirm that request." (Doc. 13-2, Cedar Decl., ¶14 and Ex. 6.)  Plaintiff's counsel requested a response to his request for an extension of the discovery cutoff by the close of business that day, July 14, 2016.  Plaintiff's counsel advised that if Defendant was unwilling to agree to such a stipulation Plaintiff "will be forced to seek the Court's assistance in this matter." (*Id.*)  Defendant's counsel responded to Plaintiff's counsel via email and reiterated Defendant's view

5

that the revised protective order did "not address most the redline comments/edits" that Defendant's counsel sent on June 20, 2016. (Doc. 13-2, Cedar Decl., Ex. 9.) Regarding Plaintiff's counsel's request for an extension of time of the discovery deadline, Defendant's counsel stated that "we will reach out to our client and, as soon as we hear back, we will let you know." (*Id.*)

Later on July 14, 2016, Plaintiff's counsel circulated a second revised version of the protected order to Defendant's counsel, which defense counsel responded she would review "as soon as possible." (Doc. 13-2, Cedar Decl., ¶ 15 and Exs. 7 and 8.) At 5:52 p.m. on July 14, Plaintiff filed the instant ex parte application to modify the Court's scheduling order and extend the non-expert discovery deadline. (Doc. 13.) At 6:32 p.m., Defendant's counsel informed Plaintiff's counsel via email that Defendant did not agree to the requested extension. (Doc. 15-1, Liu Decl, ¶¶ 12, 13; Doc. 15-2, Ex. J.)

The next day, July 15, 2016 (the non-expert discovery deadline), Defendant's counsel provided a proposed revised protective order. (Doc. 15-1, Liu Decl, ¶¶ 12, 13; Doc. 15-2, Ex. J.)

**B.     Legal Standard**

"Ex parte applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief." *Moore v. Chase*, Inc., No. 1:14-CV-01178-SKO, 2015 WL 4393031, at *4 (E.D. Cal. July 17, 2015) (quoting *Clark v. Time Warner Cable*, No. CV-07-1797-VBF(RCx), 2007 WL 1334965, at *1 (C.D. Cal. May 3, 2007)). *See also Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). The moving party must be "without fault" in creating the need for ex parte relief or establish that the "crisis [necessitating the ex parte application] occurred as a result of excusable neglect." *Moore,* 2015 WL 4393031, at *4 (quoting *Clark*, 2007 WL 1334965, at *1). An ex parte application seeks to bypass the regular noticed motion procedure; consequently, the party requesting ex parte relief must establish a basis for giving the application preference. *See id.*

Additionally, Plaintiff's requested extension of the non-expert discovery deadline would require the Court to modify the current scheduling order, which can be done "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule

16 primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (internal citation and quotation marks omitted).

**C.     Plaintiff Will Be Irreparably Harmed Without Ex Parte Relief**

"To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial." *Mission Power Eng'g Co.*, 883 F. Supp. 488 at 492. Plaintiff argues that she will be irreparably harmed if her underlying request to extend the non-expert deadline to receive Prudential's document production is heard according to the Court's regular noticed motion procedures because the non-expert discovery deadline will have passed and she will therefore be deprived of the use of Prudential's documents in prosecuting her case. (Doc. 13-1, 7:10-13.) Defendant counters that Plaintiff cannot establish irreparable prejudice because she was not diligent both in seeking documents from Prudential and a stipulation for a protective order from Defendant. (Doc. 15, 6:13-25.) Defendant argues further that Plaintiff has not shown that the documents she seeks from Prudential are relevant, thereby negating her claim of irreparable prejudice. (Doc. 15, 6:26-7:13.) The Court finds that Plaintiff has shown the irreparable prejudice required to support ex parte relief.

**1.     Plaintiff Has Demonstrated Diligence in Conducting Discovery and Good Cause to Continue the Discovery Deadline**

The Court finds that Plaintiff has been diligent in seeking discovery from Prudential. On February 5, 2016, Defendant informed Plaintiff that "Prudential took over all claims-handling responsibility when it purchased [Defendant's] life business effective January 1, 2013, and [Defendant] made no claims-handling decisions after that point." On February 10, 2016, Plaintiff sought documents from Prudential. (Doc. 15-1, Liu Decl., ¶ 3; Doc. 15-2, Ex. B).

Defendant argues that Plaintiff "has known since October 2015 that Prudential (not [Defendant]) possesses most of the documents relevant to Defendant's former life insurance business, and did essentially nothing to ensure production of the requested documents until

literally days before the close of discovery." (Doc. 15, 6:18-21.) While Defendant is correct that Defendant informed Plaintiff on October 30, 2015, that Defendant "sold its life business to Prudential in 2013, and the witnesses and documents pertaining to that business are no longer under [Defendant's] control" (Doc. 15-2, Ex. A.), it was not until February 5, 2016, after meeting and conferring on the issue, that Defendant informed Plaintiff that the "relevant window" for documents pertaining to Defendant's "claims-handling purposes" was 2010-2012, because Prudential "took over all claims-handling responsibility . . . effective January 1, 2013," and that Defendant "made no claims-handling decisions after [January 1, 2013]." (Doc. 15-1, Liu Decl., ¶ 3; Doc. 15-2, Ex. B). Defendant's representation prior to February 5, 2016, was <u>not</u> that Defendant could *not* produce claims handling documents, but rather that its ability to produce such documents was "*quite limited*." (Doc. 15-2, Ex. A; emphasis added.) Once Plaintiff was apprised that the claims handling documents in Defendant's possession, custody, and control were limited to 2010-2012, and that all claims-handling documents after January 1, 2013, were in the possession of Prudential, it promptly subpoenaed those documents from Prudential five days later.

Plaintiff was also diligent in seeking a stipulation for a protective order from Defendant. Prudential served objections to Plaintiff's subpoena on May 18, 2016. After meeting and conferring, Prudential's counsel agreed to produce the claims handling documents subject to a protective order. Less than a month after receiving Prudential's objections, on June 15, 2016, Plaintiff provided a proposed protective order to Defendant. On June 20, 2016, Defendant responded to Plaintiff and provided marked revisions to the document. Plaintiff sent a revised version of the protective order that purported to incorporate Defendant's revisions to Defendant on July 12, 2016. Defendant argues that Plaintiff was dilatory in waiting until July 12 – three days before the close of non-expert discovery – to respond to Defendant's proposed revisions to the protective order. Although Defendant is correct that Plaintiff offers no explanation as to why counsel waited three weeks to revise and return the protective order to Defendant, Defendant's requested revisions to the protective order were not insubstantial, requesting that Plaintiff "revise all references to California statutes to the corresponding federal rules," among other requests. (Doc. 13-2, Cedar Decl., ¶ 8 and Ex. 3; Doc. 15:3:8-4:3.) That it took Plaintiff three weeks to

incorporate Defendant's substantive revisions into the protective order and return it to Defendant does not negate a finding of good cause under Rule 16(b)(4) -- especially given Plaintiff's diligence in seeking documents from Prudential and in seeking discovery generally, *e.g.*, serving its first set of requests for production over one month before the Court's enter of the scheduling order.[2] Finally, Defendant does not contend-- nor could it -- that Plaintiff did not act diligently between July 12, 2016, and the filing of the instant application on July 14, 2016, in seeking Defendant's assent to both the revised protective order and her request to extend the non-expert discovery deadline.

### 2. The Prudential Documents Are Relevant

Defendant argues that Plaintiff cannot show irreparable prejudice sufficient to support the granting of ex parte relief because she has not shown that documents pertaining to Prudential's claims handling procedures are relevant. In support of its argument, Defendant characterizes the "core dispute" in the action as "whether [Defendant] properly cancelled her grandmother's life insurance policy when its cash value became insufficient to cover the cost of the premiums," citing Plaintiff's ex parte application. (Doc. 15, 7:5-7.) Far from the "core dispute," Plaintiff does not bring a claim against Defendant relating to or arising out of the cancellation of the Policy. In fact, neither the term "cancel" nor "cancellation" appears anywhere in Plaintiff's complaint or her ex parte application.[3]

Instead, Plaintiff alleges in her complaint that, following the death of the named insured in November 2012, Defendant breached the Policy and its implied covenant of good faith and fair dealing by "fail[ing] to conduct a proper, complete and unbiased investigation of the facts and circumstances regarding [Plaintiff's] claim for benefits" under the Policy and "continually and

---

[2] While Defendant contends that Plaintiff's revised protective order of July 12 "failed to address most of its revisions and comments sent on June 20" (Doc. 15, 3:8-9), the July 12 protective order did incorporate many of Defendant's requested changes, including all but one of the references to California statutes. (*See* Doc. 13-2, Cedar Decl., ¶ 9 and Ex. 4.)

[3] Setting aside Defendant's misapprehension as to the nature of Plaintiff's claims, it is unclear as to why Defendant is "deeply skeptical" of the relevance of the Prudential documents, as it was Defendant's counsel who, on two occasions, identified Prudential as potentially possessing documents responsive to Plaintiff's discovery requests. (*See* Doc. 15-2, Exhs. A and B.)

unreasonably den[ying] [Plaintiff's] claims" for benefits. (Doc. 1, Compl., ¶¶ 11, 14, 18, 24.) Plaintiff's subpoena to Prudential seeks documents relating to Prudential's handling and adjustment of claims on Defendant's behalf. (Doc. 15-1, Liu Decl., ¶ 5; Doc. 15-2, Ex. C.). Such documents are discoverable, as they are clearly relevant to Plaintiff's claim. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .").

In sum, Plaintiff has demonstrated good cause under Fed. R. Civ. 16(b)(4) to extend the non-expert discovery deadline to accommodate the production of documents by Prudential after entry of a protective order. Plaintiff has further shown that such extension should be permitted on an ex parte basis, given the irreparable harm that would result if Plaintiff were deprived of Prudential's documents because the non-expert discovery deadline had passed.

**D.     Plaintiff is Without Fault in Creating the Crisis that Requires Ex Parte Relief**

To show that the moving party is without fault, he or she must show "that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Mission Power Eng'g Co.*, 883 F. Supp. at 493. For the reasons set forth above, the Court finds that the Plaintiff acted diligently both in seeking documents from Prudential and a stipulation for a protective order from Defendant, and is therefore without fault in "creating the crisis" necessitating the extension of the non-expert discovery by ex parte application to accommodate the production of documents by Prudential after entry of a protective order.[4]

//
//
//

---

[4] The Court also notes that Plaintiff was diligent in seeking an extension of the non-expert discovery deadline once the she reasonably knew that she could not comply with the scheduling order. Plaintiff filed her ex parte application on July 14, 2016, prior to the expiration of non-expert discovery, and shortly after it became apparent that the parties would be unable to agree to the terms of a protective order or an extension of time in advance of that deadline. It appears that the parties were ultimately able to agree on the terms of a protective order after the filing of the instant ex parte application, as reflected in Defendant's counsel's July 15, 2016 email. (Doc. 15-2, Ex. J.) The parties are encouraged to meet and confer and work together to attempt to resolve any disputes that arise regarding the production of documents by Prudential. The Court finds it perplexing that the parties were unable to reach a stipulation that resolved the issues raised in the instant ex parte application prior to its filing.

## IV.     CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's ex parte application to modify the pretrial scheduling order to extend the non-expert discovery deadline by thirty (30) days is GRANTED; and

2. The deadline for non-expert discovery set forth in the Scheduling Order (Doc. 9) shall be extended to August 15, 2016, limited only to Third Party The Prudential Insurance Company of America's production of documents.

This modification does not change any other existing scheduling deadlines, including the pretrial conference and trial dates.

IT IS SO ORDERED.

Dated:    **July 26, 2016**                                    /s/ *Sheila K. Oberto*
                                                                              UNITED STATES MAGISTRATE JUDGE